United States District Court
Southern District of Texas
**ENTERED**
January 15, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT  SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Larry R. Steele, § | |
|    Petitioner, § | |
| § | |
| v. § | |
| § | Civil Action H-15-3274 |
| Lorie Davis, § | |
| Director, Texas Department § | |
| of Criminal Justice, Correctional § | |
| Institutions Division, § | |
|    Respondent. § | |

# Memorandum and Recommendation

Larry Steele was convicted of indecency with a child and sentenced to twelve years in prison. He filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 1.) Lorie Davis has moved for Summary Judgment. (D.E. 35.) The court recommends that Davis's Motion for Summary Judgment be granted and Steele's Petition be dismissed with prejudice.

1. Background and Procedural Posture

Steele was indicted on May 3, 2012, in the 278th District Court of Madison County, Texas, for indecency with a child. (D.E. 37-11 at 106.) Steele was accused of making sexual contact with a nine-year-old girl, T.W., on November 13, 2011. (D.E. 37-11 at 106; D.E. 36-5 at 120–21.) Steele, who was friends with T.W.'s father, had been staying at T.W.'s house for a week. (D.E. 36-5 at 122, 129, 153.) Steele touched T.W.'s genitals on the couch in the living room when T.W. was left alone with him. (D.E. 36-5 at 153–58.) T.W.'s mother had gone grocery shopping and T.W.'s father was working in the yard outside the house. (D.E. 36-5 at 118, 154–55, D.E. 36-6 at 66–67.) As soon as T.W.'s mother returned home, T.W. told her what happened. (D.E. 36-5 at 120.) T.W.'s mother immediately took T.W. to the

emergency room, had a doctor examine her, and called the authorities. (D.E. 36-5 at 121.)

Steele pleaded not guilty and went to trial by jury. (D.E. 37-11 at 107.) At the guilt-innocence phase of the trial, T.W. and several other witnesses testified for the state. (D.E. 36-5 at 96–116 (the police officer); D.E. 36-5 at 134–80 (T.W.); D.E. 36-5 at 116–31 (T.W.'s mother); D.E. 36-5 at 186–98, D.E. 36-6 at 15–35, 66–69 (T.W.'s father); D.E. 36-6 at 57–62 (T.W.'s half-sister); D.E. 36-6 at 62–65 (T.W.'s step brother); D.E. 36-6 at 36–47 (the doctor who examined T.W.); D.E. 36-6 at 48–57 (the forensic interviewer).) Steele moved for an instructed verdict that there was insufficient evidence to convict him of indecency with a child, but the court denied that motion. The jury convicted Steele and heard testimony from Steele's mother at the sentencing phase. (T.W. 36-6 at 87, 93–99.) The jury recommended a sentence of twelve years, which the court imposed. (D.E. 36-7 at 20–21, D.E. 37-11 at 107–08.)

Steele filed a direct appeal on November 15, 2013. (D.E. 36-10 at 1–18.) The Court of Appeals for the Fourth District of Texas in San Antonio affirmed the conviction and sentence in a written opinion. *Steele v. State*, No. 04-13-00486-CR, 2014 WL 2547602 (Tex. App.—San Antonio 2014, pet. denied). The Texas Court of Criminal Appeals (TCCA) refused Steele's petition for discretionary review (PDR). *Steele*, 2014 WL 2547602, at *1.

Steele filed his federal habeas corpus petition on November 4, 2015. (D.E. 1.) The court dismissed Steele's petition on the ground that he failed to exhaust his state remedies. (D.E. 7, 9–10.) Steele appealed, and the Fifth Circuit Court of Appeals vacated and remanded the case, concluding that Steele exhausted three of his four claims. *Steele v. Davis*, 707 F. App'x 811 (5th Cir. 2018).

On September 1, 2017, while his appeal was pending in the Fifth Circuit, Steele filed an application for a writ of habeas corpus in state court, raising the remaining, unexhausted federal habeas claim, among others. (D.E. 37-11 at 6–96.) The state trial court made written findings of fact and conclusions of law on December 5, 2017.

2

(D.E. 37-10 at 96–97.) The TCCA denied Steele's state habeas application "without written order on findings of trial court after hearing." (D.E. 37-1.) All the claims in Steele's federal habeas petition are now exhausted.

2. Standard of Review

Under 28 U.S.C. § 2254(d), claims adjudicated on the merits in state court are entitled to relief only if that adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under these standards, "a state court's factual findings are presumed to be correct, and the applicant bears the burden of rebutting that presumption by clear and convincing evidence." *Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). The district court can "infer the state court's factual findings" so long as "some indication of the legal basis for the state court's denial of relief" exists. *Ford*, 910 F.3d at 235 (citing *Goodwin v. Johnson*, 132 F.3d 162, 184 (5th Cir. 1997)).

Where the state's highest court's decision lacks any reasoning, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

3. Analysis

A. Sufficiency of evidence

Steele's first claim is that there was insufficient evidence that he touched T.W.'s genitals with the intent to arouse or gratify sexual desire, which is an element of the offense against him. *See* Tex. Penal

3

Code § 21.11(a)(1), (c) (West 2012). Steele argues that T.W. was not properly sworn as a witness and the trial court did not ensure that she understood the consequences of lying on the stand. Steele argues that T.W. made a prior inconsistent statement and takes the position that she lied on the stand. He also argues that the court of appeals did not consider testimony of the investigating officer and the examining doctor's testimony, which he claims undermined T.W.'s testimony. Davis responds that Steele's claim is meritless and fails to overcome AEDPA's deferential standard of review.

Federal habeas relief is available only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014). "[U]pon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319; *see also United States v. Sallee*, 984 F.2d 643, 647 (5th Cir. 1993). "All credibility determinations and reasonable inferences are to be resolved in favor of the verdict." *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995).

Here, two reasoned state court decisions on the issue of sufficiency of evidence are subject to AEDPA deference. *See* 28 U.S.C. § 2254(d). The state habeas court found that T.W. was adequately prepared to testify, and the state appellate court concluded that evidence presented at trial was legally sufficient to support Steele's conviction.

The state habeas court found that T.W. was well prepared to testify:

> 7. The court finds that the trial judge engaged the minor witness numerous times concerning the minor witness [sic] ability to be truthful, out of the presence of the jury; took considerable time to compose the child, instructed the jury on the procedure and the prosecutor reinforced witness knowledge as to the difference between the truth and a lie at the conclusion of his direct.

4

> . . .
> 15. The court finds that the witness of which Applicant complains in several issues was not an "incompetent" witness but a "minor" witness who was adequately questioned on the issue of truthfulness.

(D.E. 37-10 at 96–97.) The state court's finding is presumed correct. 28 U.S.C. § 2254(e)(1).

The court's own review of the record supports this finding. The state trial judge spoke with T.W. at length before the jury was called in. (D.E. 36-5 at 133–48.) The judge asked T.W. if she would testify only after she fully understood a question and knew the answer to it, and T.W. answered that she would. (D.E. 36-5 at 147–48.) The prosecutor separately asked T.W. if she knew the difference between truth and a lie, and T.W. testified that she did. (D.E. 36-5 at 161.) Based on this record, the state habeas court's finding that T.W. was adequately prepared to testify is not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

The state court of appeals ruled that T.W.'s testimony alone was "legally sufficient to find Steele made sexual contact with a child younger than 17 years of age such that he committed the crime of indecency with a child by contact." *Steele*, 2014 WL 2547602 at *2. The state appellate court's ruling is consistent with Supreme Court precedent. *See Jackson*, 443 U.S. at 307.

The court's independent review of the record confirms that the state appellate court's conclusion was neither an unreasonable application of federal law nor an unreasonable determination of the facts. At trial, T.W.'s mother testified that on the day of the alleged offense, she noticed that T.W. behaved oddly. (D.E. 36-5 at 118.) The mother testified that T.W. told her that Steele rubbed T.W.'s leg and her private parts, said that he wanted to spoil T.W., and told T.W. not to tell anybody. (D.E. 36-5 at 120.) The mother testified that she immediately inspected T.W.'s genitals, which she recalled were red. (D.E. 36-5 at 121.) The mother took T.W. to the emergency room, had a doctor examine her, and called the authorities: the police,

5

Child Protective Services, and Scotty's House, a child advocacy center. (D.E. 36-5 at 121.) T.W.'s mother wrote a police statement, in which she reported that T.W. said Steele "used his hand three times and touched her real [sic] hard on her privates." (D.E. 36-5 at 130.) The mother confirmed that Steele did not have responsibility to take care of T.W.'s personal hygiene. (D.E. 36-5 at 129.)

T.W. testified that she recognized Steele in the courtroom and that he was the same person who stayed with her family and touched her genitals on November 13, 2011, when she was left alone with him in her living room. (D.E. 36-5 at 153–58.) T.W.'s siblings also testified that at the time that the alleged incident took place, they were present in different parts of the house but no one other than Steele was with T.W. in the living room. (D.E. 36-6 at 58–61, 64.)

T.W. testified that Steele first rubbed her legs and then used his two fingers to touch her genitals three times over her clothes. (D.E. 36-5 at 156–58.) T.W. testified that Steele told her he wanted to take her home and spoil her and instructed her not to tell anyone about the incident. (D.E. 36-5 at 157.) T.W. recalled that when her mother came home, T.W. told her mother, "Larry [Steele] touched my private and told me not to tell nobody." (D.E. 36-5 at 159.)

The police officer who responded to the mother's call testified that he spoke to T.W. and her mother at the emergency room. (D.E. 36-5 at 98–100.) The officer stated that he did not take DNA evidence because T.W. had reportedly changed her clothes before she got to the hospital. (D.E. 36-5 at 100.) This statement was inconsistent with the mother's testimony that she brought T.W. to the hospital in the same clothes that T.W. was wearing when the alleged incident happened. (D.E. 36-5 at 129.) The officer also testified that he did not take a written statement from anyone other than T.W.'s mother. (D.E. 36-5 at 106–07, 113.) The officer testified that he did not think the written statements were necessary because T.W. was alone with Steele when the alleged incident happened, and T.W.'s siblings were all minor children. (D.E. 36-5 at 113, 115.)

6

The doctor who examined T.W. in the emergency room testified that she had three to four years of experience in examining the victims of sexual assault. (D.E. 36-6 at 37–38.) The doctor testified that when she examined T.W., she found tenderness in her labial area. (D.E. 36-6 at 39.) The doctor read from the medical record that "an adult male placed his hand inside patient's pants, touching her genital area. She reports he partially put his finger inside her vagina. No other contact." (D.E. 36-6 at 45–46.)

The forensic interviewer employed by Scotty's House, a child advocacy center, testified about his interview with T.W. on November 30, 2011. (D.E. 36-6 at 48–50, 55–57.) The forensic interviewer testified that, during his interview with T.W., he determined that T.W. could differentiate truth from a lie. (D.E. 36-6 at 50–51.) The prosecutor played the redacted videotape of the interview to the jury. (D.E. 36-6 at 55–57.)

The evidence, when viewed in the light most favorable to the verdict, supports the state court of appeals's conclusion that there was sufficient evidence to prove that Steele made sexual contact with T.W. with the intent to arouse or gratify sexual desire. In particular, Steele's statement about "spoiling" T.W. is a clear indication that he was touching her to gratify sexual desire. Any inconsistencies in testimony about whether Steele touched T.W. over her clothes and whether T.W. changed her clothes before she went to the hospital were brought out at the trial. (D.E. 36-5 at 158; D.E. 36-6 at 45–46.) Credibility choices must be resolved in favor of the verdict. *Resio-Trejo*, 45 F.3d at 911. Therefore, it cannot be said that "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *see also Vargas-Ocampo*, 747 F.3d at 303. This claim is meritless.

B. Prosecutor's closing arguments

Steele's second claim is that the prosecutor's closing arguments at both the guilt/innocence phase and the punishment phase tainted the trial. Steele claims that his due process rights were

7

violated because the trial court's failure to instruct the jury on the prosecutorial misconduct deprived him of the opportunity to request a mistrial. Davis responds that Steele's claim is meritless and fails to overcome AEDPA's deferential standard of review.

Federal habeas relief for prosecutorial misconduct is only available when the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). The standard of review for a federal habeas court is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden*, 477 U.S. at 181; *Barrientes*, 221 F.3d at 753.

The claimed misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (2010) (internal quotations omitted); *see also Ortega v. McCotter*, 808 F.2d 406, 410–11 (5th Cir. 1987). A trial is made fundamentally unfair if "there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Barrientes*, 221 F.3d at 753.

(1). Guilt/innocence phase

At the guilt/innocence phase of the trial, defense counsel argued that the prosecution did not prove beyond a reasonable doubt that Steele made sexual contact with T.W. or had the intent to arouse and seek sexual gratification. (D.E. 36-6 at 76–82.) The prosecutor responded by stating that defense counsel's argument led to "rabbit trails" and that the argument was the defense's "common strategy." (D.E. 36-6 at 82.) Defense counsel objected, but the court told the jury to decide the case strictly on the evidence presented and moved on without ruling on the objection. (D.E. 36-6 at 82–83.)

The state habeas court made two findings of fact. First, it found that there was "no ineffective assistance of counsel in failing to obtain a ruling on prosecutorial final argument during the trial." (D.E. 37-10 at 96, ¶ 8.) Second, it found that there was "no evidence to demonstrate a potential probability that the outcome of the trial

8

would have changed or even a substantial likelihood that a different outcome would have occurred." (D.E. 37-10 at 96, ¶ 6.) These findings are presumed correct under AEDPA. *See* 22 U.S.C. § 2254(e)(1). It can be inferred from these findings that the state court found the prosecutor's argument did not violate Steele's due process rights. This finding is also presumed correct. *See Ford*, 910 F.3d at 235.

The court's own review of the record confirms that the prosecutor's arguments at the guilt/innocence phase did not constitute reversible error, much less deny Steele's due process right to a fair trial. *See Darden*, 477 U.S. at 181; *Barrientes*, 221 F.3d at 741. The evidence against Steele was strong. The prosecutor's statement, even if improper, was isolated. In fact, the court's instruction to decide the case strictly on the evidence was an adequate curative instruction, given the nature of the prosecutor's statement. It is not at all likely that the court would have granted a mistrial were Steele to have requested it.

There is no reasonable probability that the verdict might have been different had the prosecutor's argument not taken place. *See Barrientes*, 221 F.3d at 753. Therefore, the court finds that the prosecutor's argument at the guilt/innocence phase did not "so [infect] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181; *Barrientes*, 221 F.3d at 753. Because Steele has not shown that his due process was violated, habeas relief is not available.

(2). Punishment phase

At the punishment phase, the jury was asked to assess Steele's punishment within the range of five to ninety-nine years. (D.E. 36-7 at 9.) The defense asked the jury to assess the punishment at five years, the minimum punishment after accounting for Steele's two prior felonies. (D.E. 36-7 at 11–12.) The prosecutor urged the jury to consider that Steele is a repeat offender and has previously served five years in prison for retaliation.

9

The prosecutor argued, "[w]hat does that word retaliation mean? It means either you're getting back at somebody or you're threatening to get back at somebody." (D.E. 36-7 at 16.) Defense counsel objected, and the trial court sustained the objection. (D.E. 36-7 at 16.) The prosecutor nevertheless continued to argue that the jury should consider Steele's history of retaliation and make sure that Steele never retaliates against the victim in the instant case. (D.E. 36-7 at 16.) Defense counsel objected that there is no evidence of retaliation in this case, and the trial court sustained the objection. (D.E. 36-7 at 16.) The court overruled defense counsel's request to have the jury disregard the prosecutor's argument. (D.E. 36-7 at 17.) The jury reached a unanimous verdict to sentence Steele to twelve years of confinement. (D.E. 36-7 at 19–20.)

Under AEDPA, deference is owed to the state court's last reasoned decision on the merits. *See Wilson*, 138 S.Ct. at 1192. The state appellate court held that "even if the [prosecutor's] argument regarding Steele's prior conviction for retaliation was improper and the trial court erred by refusing to instruct the jury to disregard, it was harmless error." *Steele*, 2014 WL 2547602, at *3. The state appellate court reasoned that the jury already knew about Steele's criminal history before the prosecutor made the closing argument:

> Evidence of Steele's prior conviction for retaliation, introduced as Exhibit No. 9 and mentioned in the State's argument, was offered before the court and jury without objection. During closing argument, counsel for Steele referred to his conviction for retaliation as well as his other prior convictions for: theft by check, obstructing a highway, hindering a secured creditor, and possession of a controlled substance. Therefore, by virtue of Exhibit No. 9 and Steele's own argument, the jury was advised of Steele's criminal history before the State even referred to his conviction for retaliation or attempted to suggest the jury has "a duty to make sure that this victim is never retaliated [against]." Given the foregoing and the fact that the jury recommended twelve years confinement for an

10

> offense that had an enhanced range of five to ninety-nine years, we cannot say the State's argument and the trial court's failure to instruct the jury affected his punishment and harmed Steele.

*Id.*

The court presumes the state appellate court's finding to be correct. *See Wilson*, 138 S.Ct. at 1192. The court's own review of the record supports the conclusion that Steele had a fair trial at the punishment phase.

Although the court overruled defense counsel's request for a curative instruction, there was no reasonable probability that the punishment might have been different had the court given the instruction. The court had already sustained Steele's objection to the prosecutor's retaliation argument. Steele's victim was a nine-year-old girl. Steele told the victim not to tell anyone about what he did to her. Defense counsel's argument conceded that Steele had six prior convictions, including two felonies: retaliation and possession of drugs. (D.E. 36-7 at 11–14.) Given Steele's significant criminal history, the nature of the offense, and the fact that the jury sentenced him toward the low end of the statutory range, the requested instruction would have had negligible effect, if any, on Steele's punishment.

The court finds that the prosecutor's remarks at the punishment phase did not so infect the trial with unfairness as to violate Steele's due process rights. *See Darden*, 477 U.S. at 181; *Barrientes*, 221 F.3d at 753.

C. Texas appellate court's jurisdiction

Steele's last federal habeas claim is that the state appellate court that denied his appeal lacked jurisdiction over his case. Steele argues that the Fourth District Court of Appeals in San Antonio lacked jurisdiction because his trial took place in Madison County, Texas, which is in the Tenth District under state law. Davis responds that Steele's claim is not reviewable in a federal habeas proceeding because it is a question of state law.

Habeas review is limited to questions concerning the petitioner's constitutional rights. *See* 28 U.S.C. § 2254; *see also Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding."). Whether a state court had jurisdiction over the petitioner is a question of state law. *See Watson v. Davis*, No. SA-16-CA-090-PLG, 2018 WL 3841927, at *4 (W.D. Tex. Aug. 31, 2017). Steele's claim that the state appellate court lacked jurisdiction does not separately raise an issue of federal constitutional law. Therefore, it does not merit federal habeas relief. *See Dickerson*, 932 F.2d at 1145; *Watson*, 2018 WL 3841927, at *4.

4. Conclusion

The court recommends that Davis's motion for summary judgment be granted and Steele's petition be denied with prejudice. *See* 28 U.S.C. § 2254(d).

The parties have fourteen days from service of this memorandum and recommendation to file written objections.

Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72.

Signed at Houston, Texas, on January 15, 2019.

_____
Peter Bray
United States Magistrate Judge

12